## IRENE M. JOLLY v. JESCO, INC., AND OTHERS.

135 N. W. (2d) 746.

June 11, 1965—No. 39,685.

*Robb, Robb & Van Eps,* for relators.
*Harold E. Farnes,* for respondent petitioner.
*John M. Prins,* for other respondents.

ROGOSHESKE, JUSTICE.

Certiorari to review an award of compensation by the Industrial Commission for the death of an employee resulting from an altercation

between decedent and a fellow employee in which the decedent was the instigator and aggressor.

Warren Jolly, a bricklayer, was employed by Jesco, Inc., from June 18, 1962, to August 21, 1962, when he died at age 46 on the job site immediately following an assault upon David Mikkelson, a fellow employee. On April 24, 1961, prior to employment with Jesco, Inc., decedent had suffered a myocardial infarction while performing an unusually arduous assignment in the course of his employment with Adolfson & Peterson, Inc. A referee for the commission, after a hearing in November 1961, found this heart attack to be compensable, and decedent was awarded and paid compensation and hospital and medical benefits by Anchor Casualty Company, the insurer of Adolfson & Peterson, Inc. In November 1961, he returned to part-time work with various employers, and gradually as his strength improved he resumed full-time work as a bricklayer about April 1962, although he continued to experience chest pains, discomfort, and tiredness. On June 18, 1962, he became employed by Jesco, Inc. The testimony shows that after he resumed full-time work, he performed competently with no apparent physical disability, keeping up with his fellow bricklayers, climbing scaffolds, and making no complaints about his physical condition while working.

On the day of his death, August 21, 1962, he began work at 8 a. m. He and a fellow bricklayer, David Mikkelson, whom he had known only briefly, were laying a soap tile wall. They were working from a scaffold 50 feet long and 4 feet wide, suspended 4 or 5 feet above the ground. After about an hour's work, the row of tile each was laying approached and it became necessary to "tie in the two rows." Decedent asked Mikkelson to shift his tile, presumably to make a proper fit. After repeated efforts by Mikkelson to comply, decedent became angry and Mikkelson told him, "Do it yourself." At this, decedent advanced menacingly toward Mikkelson, who tried to back away, and struck him three times with his fists, cutting Mikkelson's lip and drawing blood from his nose and mouth. Mikkelson, aware of the danger of scuffling on the scaffold and desiring that decedent "come back to his senses," said, "If you want a fight, let's get down and fight." Decedent got down, put up

his fists, and motioned threateningly to Mikkelson, who reluctantly descended. As Mikkelson walked to the place where decedent was standing and before Mikkelson could say anything, decedent struck him again and charged at him. Blows were exchanged, the men grappled and wrestled for 2 or 3 minutes, then they fell to the ground and were separated by other workers. Decedent got up, walked 4 or 5 feet, gasped, and collapsed. He died on the scene shortly thereafter.

Three doctors testified, decedent's personal physician and two others called by the employers-insurers. All expressed the opinion that the immediate precipitating cause of death was the emotion and exertion occasioned by the assault. Decedent's personal physician and the medical expert called by relators gave opinions that the residual scar damage to the heart resulting from the infarction of April 1961 was a contributing cause of death. Relator's expert conceded on cross-examination, however, that it would be "most improbable he would have died at that time had it not been for the fight and the emotion and strain that went with it." In the opinion of the expert called by Adolfson & Peterson and its insurer who, like decedent's physician, had examined decedent during his lifetime, the infarction did not contribute to the cause of death. In his opinion, the sole cause was an acute fibrillation of the heart resulting from an insufficient blood supply from vessels outside of the scar tissue following a greater demand by the heart for nourishment produced by the emotion and exertion of the fight.

The two issues presented are whether death arose out of and in the course of decedent's employment and whether the commission's conclusion that the prior heart attack was not a contributing cause of death is manifestly contrary to the evidence.

■ The first issue is clearly controlled by Petro v. Martin Baking Co. 239 Minn. 307, 58 N. W. (2d) 731, 38 Minn. L. Rev. 83. In that case we held, three justices dissenting, that an employee's death from a heart attack resulting from his work-induced altercation was compensable notwithstanding the fact that the employee was the aggressor. The reasons and authorities supporting a denial of recovery to an aggressor and those underlying our conclusions were exhaustively examined. Since our Workmen's Compensation Act does not expressly grant this

defense to an employer, we adopted the view that the death arose "out of and in the course of employment" within the meaning of Minn. St. 176.021, subd. 1, without regard to aggression. We said (239 Minn. 311, 58 N. W. [2d] 735):

"* * * When the accumulated pressures of work-induced or work-aggravated strains and frictions finally erupt into an affray which results in injury to one of the participants, it is artificial to say that an injury to the one who struck the first blow did not arise out of the employment but an injury to the recipient of that blow did arise out of the employment."

It may be noted that two of the three dissenting opinions were essentially predicated upon the ground that the altercation occurred 2 days after the accusation of dishonesty provoking it, and that such cooling-off period characterized it as a "personal grudge" assault rather than work-related. Here, although the decedent was the instigator and continuous aggressor, the assault was clearly rooted in the work and not a personal affair. Moreover, the nature and spontaneity of the assult makes the arguments for allowing benefits in this case stronger than in Petro. We are not inclined to depart from our prior decision as relators urge. To do so would inject the concept of fault into legislation designed to eliminate common-law defenses and to shift the burden of work injuries to the cost of industrial production. It would also give rise to a host of perplexing issues including that of determining who was the aggressor.[1] Furthermore, since Petro and Cunning v. City of Hopkins, 258 Minn. 306, 103 N. W. (2d) 876, where the problem was again extensively reviewed and the intention of the statutory provision under review examined, the legislature has not seen fit to provide that aggression, unlawful conduct, or willful intention to injure another be a defense to recovery of benefits. No persuasive reasons are advanced why the defense of aggression should be imposed by judicial decision, and we decline to do so.

■ To determine the cause of death it was necessary to resolve the

---

[1] 38 Minn. L. Rev. 83; Horovitz, *Assaults and Horseplay Under Workmen's Compensation Laws,* 41 Ill. L. Rev. 311.

conflict between differing opinions of qualified medical experts. Both the referee and the commission decided contrary to relators' position. A careful review of the record makes it clear that the conclusion reached is amply supported by the evidence and should be sustained.

Petitioner is allowed $250 as attorney's fees on this appeal.

Affirmed.