PAUL LEON JONES v. SCHIEK'S CAFE AND ANOTHER.

152 N. W. (2d) 356.

July 21, 1967—No. 40,420.

*Robert J. McGuire* and *Mordaunt, Walstad, Cousineau & McGuire,* for relators.

*Mitchell R. Spector* and *Abrams & Spector,* for respondent.

PETERSON, JUSTICE.

Certiorari to review a decision of the Industrial Commission awarding compensation to Paul Leon Jones for a severe knifing injury sustained by him at the hands of William Carter, both employees of Schiek's Cafe, Minneapolis, Minnesota, on August 13, 1965.

The issue for decision is whether the Jones injury arose out of or in the course of his employment. More specifically, the issue is whether this record supports the commission finding or conclusion that the assault by Carter upon Jones was "work-incurred" as the outgrowth of "accumulated pressure of work-induced or work-aggravated strains and frictions." The commission, by divided opinion, held in the affirmative, relying upon Petro v. Martin Baking Co. 239 Minn. 307, 58 N. W. (2d) 731, 38 Minn. L. Rev. 83, itself a divided decision of this court, and Jolly v. Jesco, Inc. 271 Minn. 333, 135 N. W. (2d) 746, as controlling.[1]

We decide, contrary to the Industrial Commission, that the claimant's injury did not arise out of or in the course of his employment. We observe at the outset that our prior decisions cited by the commission have not gone so far as to control decision on the facts of this case.

The commission's threshold observation was that "exactly what happened in this case is not easy to discern," and therein arise crucial points of distinction. The first distinction appears from what the commission itself could and did discern, but the ultimate distinction lies in what it gratuitously assumed without discernible proof—if not, indeed, contrary to rational inferences apparent from all the circumstances.

Jones had been employed as a busboy at Schiek's for scarcely 3 months at the time of the altercation. Carter had been employed as a doorman

---

[1] Respondent employee cites in further support of the decision: Cunning v. City of Hopkins, 258 Minn. 306, 103 N. W. (2d) 876; Johannsen v. Acton Const. Co. Inc. 264 Minn. 540, 119 N. W. (2d) 826; Nelson v. City of St. Paul, 249 Minn. 53, 81 N. W. (2d) 272.

there for about 4 years. The two employees, by the very nature of their work, had almost no daily contact with each other in the course of their employment. They worked in different places in the establishment, one inside and one outside;[2] they worked somewhat different shifts; they took their meals in different areas; and each was under separate supervision. Neither had occasion to make complaint at any time about the other to management about any work-related friction, or otherwise.

At about 8 p. m. on the date of injury, a normally busy dining hour, Carter entered the restaurant to visit the employee's restroom. This required his going down a stairway which was located between the public dining room and the kitchen. Waitresses and busboys were at that same time carrying trays of food from the kitchen to guests in the dining room, which required passing through swinging doors. As Carter returned by the same route, he inadvertently bumped into some of the waitresses and Jones, and, in doing so, apparently laid both his hands on Jones. Carter said, "pardon me." It does not appear that the waitresses objected, nor would this seem to be an unnatural occurrence. Jones, however, evinced offense and told Carter to get his "filthy hands away from me before I bust you in the damn mouth." What, if anything, Carter may have replied does not appear. Carter walked away and returned to his work station outside the front door of the establishment.

At about 10 p. m. Jones left work early, complaining that he did not feel well. He left the building, as do all employees, by the front door. At that time and without any provocation—at least without work-connected provocation—he attacked Carter and beat him about the head with his fists, using similar language as he had earlier in the kitchen-dining room area. Carter at the time had a knife in his hand which he customarily used in his work for cutting menus into tickets to identify the cars of patrons. Carter fended off Jones and severely cut him with the knife. Whether or not Carter's use of the knife in this circumstance was itself

---

[2] Jones did carry in a large rubber entry mat for Carter at closing time nightly, for which Carter paid him 50 cents each time. This was a voluntary and amicable arrangement between themselves and in no apparent way an element of altercation at any time.

a public offense is not material to decision of this workmen's compensation claim.

The commission concluded the factfinding portion of its opinion with these observations:

"We note defendant's counsel's reference to the hospital records and the history contained therein.[3] However, we also note the other discrepancies. The bartender said Jones proclaimed the wound to be self-inflicted. Carter and other witnesses thought the employee looked different and described him as moody. Carter described him as being under the influence of dope or alcohol, but no one smelled any alcohol. Jones says he was excited, and he had reason for the feeling. Actually, the record contains no evidence of substance regarding alcohol, or of any relationship between Carter and Jones' wife. *From the evidence, we can only assume that the ill-feeling came from the work-incurred incident of jostling in close quarters,* and that Jones was the aggressor." (Italics supplied.)

Facts stated in this opinion are taken from the record and, when testimony was disputed, from the commission's brief findings contained in its own opinion. We credit, as we must, so much of the commission's opinion as may be deemed findings of fact upon competent evidence, but so much of the previously quoted paragraph as constitutes gratuitous assumption of fact or inference without substantial support in the record is not binding upon us. Johnson v. D. B. Rosenblatt, Inc. 265 Minn. 427, 430, 122 N. W. (2d) 31, 34. The more persuasive opinion, which we consider determinative of the issue, is that articulated by the dissenting commissioner:

"The infrequent contacts during work—one a door man, the other a bus boy—produce doubt that condition of employment had any relationship to the altercation. It appears incredible that a slight body contact

---

[3] The reference to the hospital records was twofold: (a) The history contained in the admission sheet of August 13, 1965, indicated that Jones stated that someone was "messing around" with his wife at Schiek's Cafe where he was employed as a busboy; that this person was a doorman; and that he, Jones, was going to get even; and (b) under "respiratory" was the notation "alcohol heavy." The doctor's notes stated that "patient states he has not eaten since 2:00 p. m. and has a few drinks."

would lead to an assault two hours later, unless there were strong personal feelings that had developed outside the employment. There was no evidence that the work had created any difficulty between the two employees prior to that evening. A reasonable inference would be that the petitioner sought contact with the door man for reasons other than a mere casual contact in a crowded restaurant. Under facts such as here, I cannot conclude that the petitioner has proved that his injury arose out of his employment."

Workmen's compensation statutes, without doubt, should be accorded a liberal construction in order to achieve the fundamental and remedial legislative objective—established doctrine for more than 40 years.[4] Today, as much as before, however, we cannot by construction ignore the most fundamental statutory concept:

"* * * The act was devised to provide protection to workmen in the form of compensation for injuries arising from hazards having a reasonable relation to the employment and which followed as a natural incident of the work. It was designed to compensate employes for industrial accidents and not for accidents due to causes not connected with the employment. * * * [I]t was a salutary social development designed to force industry to bear industry's burden and to consider that burden as a proportionate part of the expense of production. On the one hand, the employe had a right of recovery without proof of negligence and without being subjected to the defenses of contributory negligence and assumption of risk. On the other hand, compensation was restricted exclusively to those injuries arising out of and in the course of the employment; or, in other words, to those which had their origin in a risk reasonably connected with the employment."[5]

There may be exceptional cases, as cited by the commission, where strains and tensions may be deemed so inherent in the nature of the work

[4] Moore v. J. A. McNulty Co. 171 Minn. 75, 79, 213 N. W. 546, 548, quoted in Kiley v. Sward-Kemp Drug Co. 214 Minn. 548, 554, 9 N. W. (2d) 237, 240.

[5] Dissenting opinion of Mr. Justice Youngdahl, concurred in by Mr. Justice Harry Peterson, in Kiley v. Sward-Kemp Drug Co. 214 Minn. 548, 555, 9 N. W. (2d) 237, 241.

and so productive of spontaneous industrial altercations as to give rise to work-connected injury or death. We have never, however, accorded that status to any and all altercations simply because the incident in some remote way might be said to touch upon the employment relationship.[6] Neither the facts nor the law stated in Petro v. Martin Baking Co. *supra,* or Jolly v. Jesco, Inc. *supra,* compel acceptance of this case as such an exceptional case. In Petro, the work connection of the altercation was apparently assumed, at least in the distinguishing sense that the substantial evidence adduced before the commission compelled affirmance of its firm findings under established principles of review. The vital issues there, however, which are not necessarily reached in this case, were whether a reasonable time had elapsed for the work-connected passions of the participants to subside and, if not, whether an aggressor could in any event be compensated. Likewise in Jolly, the substantial holding, on impressively more substantial evidence, was that "the assault was clearly rooted in the work and not a personal affair" and that "the nature and spontaneity of the assault * * * [made a] case stronger than in Petro." 271 Minn. 336, 135 N. W. (2d) 748.

Taxation of costs and disbursements by relators is disallowed notwithstanding our decision herein.

Reversed.

---

[6] See, for example, Goodland v. L. S. Donaldson Co. 227 Minn. 583, 36 N. W. (2d) 4, where the commission and this court, on facts seemingly more substantial than in the instant case, denied compensation.