STATE OF MINNESOTA

IN SUPREME COURT

A12-0709

Court of Appeals                                                              Page, J.
                                   Concurring in part, dissenting in part, Anderson, J.,
                                                     Gildea, C.J., and Dietzen, J.

Darrel Schmitz,

                  Respondent,

vs.                                                              Filed:  August 27, 2014
                                                              Office of Appellate Courts
United States Steel Corporation,

                  Appellant.

_____

Michelle Dye Neumann, Phillip M. Kitzer, Halunen & Associates, Minneapolis, Minnesota, for respondent.

Douglas R. Christensen, Joel O'Malley, Marilyn Clark, Dorsey & Whitney LLP, Minneapolis, Minnesota; and

Rodney M. Torbic, United States Steel Corporation, Pittsburgh, Pennsylvania, for appellant.

Steven Andrew Smith, Cristina Parra, Nichols Kaster, PLLP, Minneapolis, Minnesota, for amicus curiae National Employment Lawyers Association.

_____

1

1.      A retaliatory-discharge claim under the Workers' Compensation Act, Minn. Stat. § 176.82, subd. 1 (2012), that seeks only money damages is legal in nature and therefore carries an attendant right to a jury trial under the Minnesota Constitution.

2.      An employer may not assert a *Faragher/Ellerth* affirmative defense to vicarious liability for a threat-to-discharge claim under Minn. Stat. § 176.82, subd. 1.

Affirmed.

O P I N I O N

PAGE, Justice.

Respondent Darrell Schmitz commenced an action against his former employer, appellant United States Steel Corporation (U.S. Steel), alleging, among other things, retaliatory-discharge and threat-to-discharge claims under the Workers' Compensation Act (WCA), Minn. Stat. §§ 176.001-.862 (2012).  After various proceedings below, we granted U.S. Steel's petition for review on two issues.  For the reasons discussed below, we affirm the court of appeals and hold that:  (1) Schmitz has the right to a jury trial on his retaliatory-discharge claim under Minn. Stat. § 176.82, subd. 1; and (2) U.S. Steel may not assert a *Faragher/Ellerth* affirmative defense[1] to Schmitz's threat-to-discharge claim under Minn. Stat. § 176.82, subd. 1.

---

[1]      The United States Supreme Court first recognized this defense in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), two decisions released on the same day.  The decisions established a standard for employer vicarious liability for hostile-environment sexual-harassment claims.  As a result of these decisions, a *Faragher/Ellerth* defense is available to employers as an

(Footnote continued on next page.)

In October 2006, Schmitz was employed as a maintenance mechanic for U.S. Steel in Keewatin, Minnesota. On October 23, 2006, Schmitz injured his back while replacing a steel liner. The injury occurred when he accessed some equipment and "felt a pop" in his back, which caused him to fall to his knees. Schmitz immediately reported the incident to his supervisor, foreman M.B. Schmitz testified that he did not fill out an accident report that day, that it is the foreman's job to fill out accident reports, and that filing an accident report is the first step toward making a claim for workers' compensation benefits at U.S. Steel.

The next day, Schmitz called M.B. from home to tell him that his side and back felt strange. M.B. reported the call to his supervisor, L.S., and the two of them subsequently spoke to Schmitz. Schmitz testified that L.S. warned Schmitz against filing an accident report:

> [L.S.] told me that the company would – was taking a big, dim view if I would fill out an accident report and they wouldn't like it at all. And I said, "What are they going to do, fire me?" He said, "Well, without having to perjure [myself]," he said, "Yes."

---

(Footnote continued from previous page.)
affirmative defense to employee claims involving hostile work environment harassment by the employee's supervisors or superiors. An employer who proves that (1) it exercised reasonable care to prevent and correct workplace harassment and (2) the victim-employee unreasonably failed to take advantage of employer-established preventive and corrective mechanisms can satisfy the affirmative defense. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. We adopted the *Faragher/Ellerth* affirmative defense, in the context of hostile-environment sexual-harassment claims brought under the Minnesota Human Rights Act, in *Frieler v. Carlson Marketing Group, Inc.*, 751 N.W.2d 558, 568 (Minn. 2008).

L.S.'s testimony contradicted Schmitz's. L.S. claimed that he simply asked Schmitz if he was hurt at work, and Schmitz responded that he was not saying he was injured at work, just that his back did not feel the same. Two days later, after being examined by his doctor, Schmitz returned to work without any physical restrictions.

In December 2006, Schmitz injured his back at home. Because of his December 2006 injury, Schmitz was not cleared to return to work until October 2007.[2] At that time, Schmitz had certain work restrictions that prevented him from performing the functions of a maintenance mechanic, and U.S. Steel claimed that it did not have any job openings that could accommodate those restrictions. Schmitz never returned to work at U.S. Steel.

In May 2008, Schmitz filed a complaint against U.S. Steel in district court. In the complaint, Schmitz asserted that U.S. Steel discharged him for seeking workers' compensation benefits, in violation of Minn. Stat. § 176.82, subd. 1, and refused to offer Schmitz continued employment, in violation of Minn. Stat. § 176.82, subd. 2. Schmitz also asserted a disability-discrimination claim under the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01-.43 (2012). The district court granted summary judgment to U.S. Steel on each of the claims.

Schmitz appealed for the first time, and the court of appeals affirmed the district court's grant of summary judgment on Schmitz's claims under the MHRA, but reversed

---

[2]    In the meantime, Schmitz filed a claim for workers' compensation benefits in April 2007 for the December 2006 injury. U.S. Steel denied liability. A compensation judge denied the petition in June 2008 after concluding that Schmitz's December 2006 injury was not work-related.

4

and remanded on Schmitz's section 176.82 claims. *Schmitz v. U.S. Steel Corp.*, No. A10-0633, 2010 WL 4941668, at \*1 (Minn. App. Dec. 7, 2010).

On remand, the district court granted Schmitz's motion to amend the complaint to add a claim for threatening to discharge him for seeking workers' compensation benefits in violation of Minn. Stat. § 176.82, subd. 1. The court also granted U.S. Steel's pretrial motion to quash Schmitz's demand for a jury trial on the retaliatory-discharge and refusal-to-offer-continued-employment claims. In quashing the demand, the district court concluded that Minn. Stat. § 176.82 does not provide such a right.

Following a bench trial, the district court: (1) entered judgment for Schmitz on his threat-to-discharge claim, awarding $15,000 in emotional-distress damages; (2) rejected Schmitz's retaliatory-discharge and refusal-to-offer-continued-employment claims; (3) denied U.S. Steel's posttrial motion seeking a finding that U.S. Steel satisfied the *Faragher/Ellerth* affirmative defense to supervisory misconduct; and (4) granted Schmitz's motion for attorney fees in part, awarding $203,112.

On appeal, the court of appeals again affirmed in part, reversed in part, and remanded. *Schmitz v. U.S. Steel Corp. (Schmitz II)*, 831 N.W.2d 656, 662 (Minn. App. 2013). The court of appeals affirmed the judgment for U.S. Steel on Schmitz's refusal-to-offer-continued-employment claim and concluded that Schmitz is not entitled to a jury trial on that claim because it is equitable in nature. *Id.* at 679. However, the court of appeals reversed and remanded the denial of a jury trial on Schmitz's retaliatory-discharge claim. It concluded that a retaliatory-discharge claim under Minn. Stat. § 176.82, subd. 1, that seeks only money damages is legal rather than equitable in nature

5

and, therefore, Schmitz is guaranteed the right to a jury trial under the Minnesota Constitution. *Schmitz II*, 831 N.W.2d at 678. With respect to U.S. Steel's contention that it was entitled to assert a *Faragher/Ellerth* affirmative defense to Schmitz's section 176.82 threat-to-discharge claim, the court of appeals ruled that there was no legal basis for permitting such a defense. *Schmitz II*, 831 N.W.2d at 673.

I.

We turn first to the question of whether Schmitz has the right to a jury trial on his retaliatory-discharge claim under Minn. Stat § 176.82, subd. 1.[3] Minnesota Statutes § 176.82, subd. 1, provides a cause of action for retaliatory discharge for seeking workers' compensation benefits:

> Any person discharging or threatening to discharge an employee for seeking workers' compensation benefits or in any manner intentionally obstructing an employee seeking workers' compensation benefits is liable in a civil action for damages incurred by the employee including any diminution in workers' compensation benefits caused by a violation of this section including costs and reasonable attorney fees, and for punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled.

Minn. Stat. § 176.82, subd. 1. "The right to a jury trial must be found either in the Minnesota Constitution or provided specifically by statute." *Ewert v. City of Winthrop*, 278 N.W.2d 545, 550 (Minn. 1979). Section 176.82 does not expressly provide such a right. Therefore, the right to a jury trial in this case, if it exists, must arise from the

---

[3] In its petition for review to this court, U.S. Steel raised two issues: (1) whether there is a right to a jury trial for retaliatory-discharge claims brought under Minn. Stat. § 176.82, subd. 1; and (2) whether U.S. Steel could raise a *Faragher/Ellerth* defense. Schmitz did not file a petition for cross-review. Thus, only the two issues raised by U.S. Steel are properly before us.

Minnesota Constitution. Whether the Minnesota Constitution provides the right to a jury trial is a question of law that we review de novo. *United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equip., LLC*, 813 N.W.2d 49, 53 (Minn. 2012).

Article I, Section 4, of the Minnesota Constitution provides that: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." Minn. Const. art. I, § 4. "This provision is intended to continue, unimpaired and inviolate, the right to trial by jury as it existed in the Territory of Minnesota when our constitution was adopted in 1857." *Abraham v. Cnty. of Hennepin*, 639 N.W.2d 342, 348 (Minn. 2002). "A party is therefore constitutionally entitled to a trial by jury 'if a party raising that same theory for relief at the time the Minnesota Constitution was adopted also would have been entitled to a jury trial.' " *United Prairie Bank*, 813 N.W.2d at 53 (quoting *Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 149 (Minn. 2001)).

We have explained, however, that "Article I, Section 4 does not freeze the right to a jury trial to only those causes of action that existed in 1857." *United Prairie Bank*, 813 N.W.2d at 53. To determine the right to a jury trial, we analyze "current causes of action and pleading practices in the context of the theories of relief . . . and the jurisprudence" at the time of the enactment of Minnesota's Constitution. *Id.* at 53-54. We focus not on whether the exact cause of action existed, but on the *type* of action—whether the claim is an action at law, for which the Constitution guarantees a right to a jury trial, or an action in equity, for which there is no constitutional guarantee to a jury trial. *Id.* at 54.

7

U.S. Steel argues that the court of appeals erred in reversing the district court's decision to quash Schmitz's request for a jury trial on his retaliatory-discharge claim. According to U.S. Steel, the Legislature was entitled to, and did, preclude the right to a jury trial when it created a new set of rights and remedies under the WCA as part of the mutual renunciation of common law rights and defenses by employers and employees in cases involving workplace injuries. In doing so, U.S. Steel asserts, the Legislature did not specifically include in the WCA the right to a jury trial. U.S. Steel cautions that allowing Schmitz a jury trial on his retaliatory-discharge claim will treat section 176.82 claims differently than other claims arising under the WCA, contrary to the Act's purpose.

Schmitz argues that he has the constitutional right to a jury trial on his retaliatory-discharge claim under section 176.82, subdivision 1, and that our analysis should not focus on whether a particular cause of action was identified as a common law action when the constitution was enacted, but rather on whether the action is of a type that would have been considered an action at law in 1857. On that basis, he contends that, because his claim is legal in nature and he is seeking monetary instead of equitable relief, he is entitled to a jury trial.

We addressed an analogous situation in *Abraham*, 639 N.W.2d at 354, which held that an action alleging the tort of retaliatory discharge and seeking only money damages under the Whistleblower Act, Minn. Stat § 181.932-.935 (2012), and the Minnesota Occupational Safety and Health Act, Minn. Stat. § 182.669, subd. 1 (2012), is "a cause of action at law with a constitutional right to jury trial." *Abraham*, 639 N.W.2d at 354. In

8

*Abraham* we traced the origins of wrongful discharge claims, noting that as early as 1861 we had recognized claims for wrongful discharge as "causes of action at law, and they were consequently tried to juries." *Id.* at 350-51. Although *Abraham* involved statutory claims that were not available at the time the constitution was adopted, we explained that our "analysis of the right to a jury trial remains the same: are these claims for retaliatory discharge seeking only money damages causes of action at law?" *Id.* at 352. Ultimately, we held that a retaliatory-discharge claim—a subcategory of wrongful-discharge claims—sounded in tort and that a tort action seeking money damages is an action at law with an attendant right to a jury trial. *Id.* at 352-54.

Schmitz's claim under Minn. Stat. § 176.82, subd. 1, like Abraham's claims under the Whistleblower Act and the Minnesota Occupational Safety and Health Act, are legal in nature and, like Abraham, Schmitz seeks only monetary damages. Seeing no basis to treat Schmitz's claim any differently than the retaliatory discharge claims in *Abraham*, we conclude that Schmitz's claim is a cause of action at law with a constitutional right to jury trial.

U.S. Steel is generally correct that in enacting the WCA the Legislature created specific rights and remedies as part of a mutual renunciation of common law rights and defenses in cases involving workplace injuries. The WCA, which was " 'devised to provide protection to [employees] in the form of compensation for injuries arising from hazards having a reasonable relation to the employment and which followed as a natural incident of the work,' " was a " 'salutary social development' " that created a specialized claims process for workplace injury and an exclusive remedy for the injury. *Jones v.*

9

*Schiek's Cafe*, 277 Minn. 273, 277, 152 N.W.2d 356, 358-59 (1967) (quoting *Kiley v. Sward-Kemp Drug Co.*, 214 Minn. 548, 555, 9 N.W.2d 237, 241 (1943) (Youngdahl, J., dissenting)). However, U.S. Steel's reading of the Act to preclude the right to trial by jury for retaliatory-discharge claims under section 176.82, subdivision 1, ignores the constitutional mandate that guarantees the right to a jury trial for causes of action at law, as well as the plain language of section 176.82, which refers to the retaliatory-discharge claim as a "civil action" for damages.

U.S. Steel and the concurrence and dissent rely heavily on *Breimhorst v. Beckman* to support their contention that a section 176.82 retaliatory-discharge claim is part and parcel of the WCA's comprehensive statutory scheme, one that created new and adequate remedies based on a mutual renunciation of employer liability and employee tort claims.[4] 227 Minn. 409, 35 N.W.2d 719 (1949). However, that reliance is misplaced. In *Breimhorst*, we found no right to a jury trial for an injured employee's claim for workers'

---

[4]    In *Abraham*, we looked to *Tyroll v. Private Label Chemicals, Inc.*, 505 N.W.2d 54 (Minn. 1993), to identify the "thread run[ning] through [the court's] line of decisions." *Abraham*, 639 N.W.2d at 349. In *Tyroll*, an employer/insurer intervened in an injured worker's suit against a third-party tortfeasor. 505 N.W.2d at 56. The court held that either party was entitled to a jury trial on a subrogation claim arising under the WCA. *Id.* at 57; *see also Abraham*, 639 N.W.2d at 349 ("In *Tyroll*, . . . [w]e concluded that the claims were common law issues triable to a jury because of the essential nature and character of the controversy, even though the [WCA] statutorily created the right of the employer-insurer to intervene and maintain the action as a subrogee long after our constitution was adopted."). *Tyroll* contradicts U.S. Steel's argument that no jury-trial right exists for *any* and all claims connected to the WCA. It is undisputed that Schmitz's retaliatory-discharge claim and *Tyroll* both involve rights arising under the WCA. Schmitz's claim involves the right to be free from retaliatory discharge for seeking workers' compensation benefits; and *Tyroll* involves the right to subrogation. As evidenced by *Tyroll*, just because a case involves a right arising under the WCA (or is in some way connected to the WCA) does not mean there is no right to a jury trial.

compensation benefits, concluding that a claim for workers' compensation benefits differs from "an action at law," which is "a proceeding before a court and does not pertain to proceedings before quasi-judicial bodies." *Id.* at 434, 35 N.W.2d at 734. *Breimhorst* emphasized that when the Legislature abolished the common law work-injury tort—the claim before the court in *Breimhorst*—the Legislature replaced the tort claim with a new statutory remedy under the WCA. *Id.* at 429, 35 N.W.2d at 732 ("The workmen's compensation act, insofar as it provides any compensation to an employe[e] accidentally injured in the course of his employment, is exclusive of all other remedies."); *see also McDaniel v. United Hardware Distrib. Co.*, 469 N.W.2d 84, 85-86 (Minn. 1991) ("Section 176.82 is not a codification of the common law. . . . [It] grants specific rights and remedies, not previously recognized, to employees who are threatened with discharge or are discharged for seeking workers' compensation benefits.");[5] *Ewert*, 278 N.W.2d at 550 (stating that there is no right to a jury trial on an appeal from a special assessment because such an appeal is a right established by statute and not a right existing at common law).

---

[5] The concurrence and dissent cites *McDaniel*, 469 N.W.2d at 85-86, to support its contention that because the WCA abolished an injured employee's common law action for damages, a retaliatory-discharge claim under Minn. Stat. § 176.82, subd. 1, does not carry the right to a jury trial. However, *McDaniel* does not undermine the court's declaration in *Abraham* that "the right to a jury trial applies to all causes of action at law, regardless of whether the legislature has codified the cause of action." *Abraham*, 639 N.W.2d at 354. The concurrence and dissent is wrong. Our conclusion that retaliatory-discharge claims under Minn. Stat. § 176.82, subd. 1, carry an attendant right to a jury trial is consistent with *Abraham* and is rooted in the Legislature's creation of a civil action that is legal in nature.

11

*Breimhorst* involved an injured employee's claim for workers' compensation benefits. Schmitz no longer seeks workers' compensation benefits. His workers' compensation claim was denied by a workers' compensation judge in 2008. In this action, Schmitz's claim seeks monetary damages for retaliatory discharge, and so it is distinguishable from *Breimhorst*. In fact, the claim for workers' compensation benefits in *Breimhorst* was completely different from the retaliatory-discharge claim here. Chapter 176, which generally provides that claims for workers' compensation benefits are to be litigated before an executive branch compensation judge, eliminated common law remedies, including punitive damages. Within chapter 176, however, Minn. Stat. § 176.82, subd. 1, explicitly provides for a civil cause of action and permits punitive damages. Given its differences from this case, *Breimhorst* does not support the concurrence and dissent's position. There, the cause of action *was* new, adequate, and fundamentally different, but here the retaliatory discharge cause of action, while new to workers' compensation, is not fundamentally different than such causes of action under the common law. In actuality, it is fundamentally the same.

Our decision in *Abraham* reaffirmed Minnesota's constitutional guarantee of the right to a jury trial for actions at law regardless of whether the action is grounded in common law or statute.[6] 639 N.W.2d at 354. *Abraham* also clarified that in Minnesota,

---

[6] The concurrence and dissent's focus is on the fact that workers' compensation is not an outgrowth of the common law. 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law*, ch. 2, Scope (2013). That focus is misplaced. Regardless of whether the exact cause of action of retaliatory discharge existed at common law, retaliatory discharge is a cause of action at law because it is the *type* of action that would

(Footnote continued on next page.)

retaliatory-discharge claims are actions at law. *Id.* at 352-53. We even "recognized that the legislature abolished a common law cause of action for an employee injured on the job, replacing it with a remedy under the [WCA]," but explained that we "did not hold in *Breimhorst* that the legislature could deny the constitutional right to jury trial when it codifies, creates, or modifies a cause of action at law." *Id.* at 353-54. *Abraham* also clarified the court's earlier decision in *Ewert*: "We did not hold in *Ewert* that all statutory causes of action are equitable actions with no right to jury trial. When a statutory cause of action is legal in nature . . . there is a constitutional right to jury trial." *Abraham*, 629 N.W.2d at 354 (citation omitted).

While the concurrence and dissent contends that a retaliatory discharge claim[7] under Minn. Stat. § 176.82, subd. 1, is new, adequate, and fundamentally different from the common law action for retaliatory discharge, it offers no explanation as to why the claim is new, adequate, and fundamentally different, other than that the Legislature said that the WCA replaces common law remedies. The truth is that there is no fundamental

---

(Footnote continued from previous page.)
have been an action at law in 1857. Whether it existed at common law is not dispositive. What is dispositive is the Legislature's creation of a civil action under Minn. Stat. § 176.82, subd. 1.

[7] The Legislature created a new system to address work-related injuries when it enacted the WCA. Under that system, an injured employee's entitlement to workers' compensation benefits is not subject to a jury determination. Nor is the injured employee entitled to have an Article IV judge make that determination. While a claim for workers' compensation benefits is not an action at law, a retaliatory-discharge claim seeking only money damages is by definition legal in nature. Minn. Stat. § 176.82, subd. 1 (stating that an employer may be "liable in a civil action" for damages for discharging an employee for seeking workers' compensation benefits).

difference between the statutory retaliatory discharge remedy in the WCA and its common law counterpart other than that the Legislature extended the cause of action to workers' compensation cases. The Legislature defines the cause of action as a "civil action for damages," Minn. Stat. § 176.82, subd. 1, just like its common law analog. The elements of the cause of action are exactly the same as a common law wrongful discharge claim, as examined in *Abraham*.[8] In other words, the cause of action here, as defined by the Legislature in Minn. Stat. § 176.82, subd. 1, is identical in all relevant respects to the cause of action in *Abraham*. Because the Minnesota Constitution cannot be abrogated by statute, the Legislature cannot simply place a workers' compensation label on a common law cause of action and do away with the jury-trial requirement. *Abraham*, 639 N.W.2d at 354 ("[T]he legislature may expand the right to a jury but it may not withdraw the

---

[8] U.S. Steel and the concurrence and dissent ignore some fundamental tenets of our decision in *Abraham*. First, we explained in *Abraham* that in our *Breimhorst* decision we concluded that "when the legislature abolished a common law cause of action and substituted a remedy that was new, adequate, and fundamentally different from that which was provided at common law, there was no constitutional right to a jury." *Abraham*, 639 N.W.2d at 353-54 (citing *Breimhorst*, 227 Minn. at 434, 35 N.W.2d at 734). With the creation of the WCA, the Legislature abolished common law tort claims for injured workers and provided new remedies. One of those remedies is a claim for retaliatory discharge, a claim that is *not* fundamentally different from claims that would have been available at common law. Therefore, retaliatory-discharge claims brought under section 176.82, subdivision 1, carry an attendant right to trial by jury. Second, in *Abraham*, we made clear that in *Breimhorst* we did not hold that the Legislature could deny the constitutional right to jury trial by codifying, creating, or modifying a cause of action at law. *Abraham*, 639 N.W.2d at 354. Ultimately, what U.S. Steel and the concurrence and dissent fail to recognize is that the Legislature, as part of the WCA's comprehensive statutory scheme, created a new and adequate remedy for a claim of retaliatory discharge, a civil cause of action to be litigated as a claim for damages in district court and not before the quasi-judicial bodies set up to hear workers' compensation claims.

14

constitutional right to jury trial merely by codifying a common law cause of action.").

But essentially, the concurrence and dissent contends that the Legislature can do just that.

What we said in *Abraham* bears repeating here: "[W]e clarify today that the right to a jury trial applies to all causes of action at law, regardless of whether the legislature has codified the cause of action." *Abraham*, 639 N.W.2d at 354. Here, the Legislature codified a cause of action at law. In short, if the Legislature creates a cause of action at law within a non-remedial statutory scheme, claims under that cause of action are no different than any other cause of action at law and the claimant is entitled to a jury trial on the claim.

By the plain language of Minn. Stat. § 176.82, subd. 1, the Legislature created a civil action for damages for retaliating against an employee for seeking workers' compensation benefits. By their very nature, civil actions, which are litigated in district court, are outside the workers' compensation system and damages awarded on the claim do not constitute workers' compensation benefits. *Karnes v. Quality Pork Processors*, 532 N.W.2d 560, 563 (Minn. 1995) ("A section 176.82 retaliatory discharge action is . . . a common law cause of action outside the purview of the [WCA]."). Thus, U.S. Steel's contention that the WCA's comprehensive statutory scheme abolished and repealed all existing common law causes of action is unavailing. With respect to Minn. Stat. § 176.82, subd. 1, the Legislature did just the opposite; it codified a civil action for damages for retaliatory discharge. Therefore, we conclude that an employee who brings

an action seeking monetary damages under section 176.82, subdivision 1, for retaliatory discharge is entitled to a jury trial.

## II.

We next address U.S. Steel's contention that it was entitled to assert a *Faragher/Ellerth* defense to Schmitz's threat-to-discharge claim. The district court awarded Schmitz $15,000 in emotional-distress damages on his threat-to-discharge claim under Minn. Stat. § 176.82, subd. 1, crediting Schmitz's testimony that his foreman's supervisor, L.S., told him that the company "would not look favorably upon" Schmitz if he filed an accident report. U.S. Steel subsequently moved for amended findings, asking the district court to find that U.S. Steel satisfied the *Faragher/Ellerth* defense to supervisor misconduct. The district court concluded that U.S. Steel was not entitled to assert the defense and denied U.S. Steel's motion. The court of appeals affirmed, concluding that U.S. Steel was vicariously liable for its supervisor's threat to discharge an employee for seeking workers' compensation benefits. *Schmitz II*, 831 N.W.2d at 673.

In *Faragher* and *Ellerth*, the United States Supreme Court held that under agency principles, an employer is liable for actionable discrimination caused by a supervisor. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742 (1998). The Court further held, however, that in sexual harassment cases involving a hostile environment "created by a supervisor with immediate (or successively higher) authority over the employee," an employer may raise an affirmative defense to liability if no tangible employment action is taken and if the employer proves by a preponderance of the evidence (1) "that the employer exercised reasonable care to

16

prevent and correct promptly any sexually harassing behavior" and (2) "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

In essence, U.S. Steel is asking us to extend the *Faragher/Ellerth* affirmative defense to claims beyond hostile environment sexual harassment. We decline to do so. Therefore, we affirm the court of appeals.

Affirmed.

CONCURRENCE & DISSENT

ANDERSON, Justice (concurring in part, dissenting in part).

I concur with Part II of the majority opinion, concluding that an employer may not assert a *Faragher/Ellerth* defense to a threat-to-discharge claim under Minn. Stat. § 176.82, subd. 1 (2012), but I dissent as to Part I regarding the right to a jury trial under that statute. While I agree with the majority that we normally look to the nature and character of an action to determine the right to a jury trial, this analysis does not apply in situations in which the Legislature has specifically abolished a common law cause of action and replaced it with a fundamentally new and different remedy. *Abraham v. Cnty. of Hennepin*, 639 N.W.2d 342, 353-54 (Minn. 2002). Minnesota Statutes § 176.82, subd. 1, is part of the Workers' Compensation Act (WCA), and we have repeatedly held that the Legislature can either grant or withhold the right to a jury trial under the WCA because the Act creates new remedies that abolish and replace any common law causes of action. *Abraham*, 639 N.W.2d at 353-54; *Breimhorst v. Beckman*, 227 Minn. 409, 434, 35 N.W.2d 719, 734 (1949). Because the Legislature did not provide for a jury trial and because this right is not guaranteed in this situation under Article I, Section 4, of the Minnesota Constitution, I conclude that there is no right to a jury trial for claims brought under Minn. Stat. § 176.82, subd. 1. Therefore, I respectfully dissent.

I.

As the majority discusses, the right to a jury trial must stem from either statute or the Minnesota Constitution. *Ewert v. City of Winthrop*, 278 N.W.2d 545, 550 (Minn. 1979). Looking first at whether the right to a trial by jury is protected by the Minnesota

Constitution, Article I, Section 4, states that "[t]he right of trial by jury . . . shall extend to all cases at law." We have clarified that this right attaches not only to causes of action that existed when the Minnesota Constitution was written, but also to causes of action that are "the same type of action for which a jury trial existed when the constitution was adopted, any cause of action *at law*." *Abraham*, 639 N.W.2d at 349. This includes causes of action in which the Legislature "codifies, creates, or modifies a cause of action at law." *Id.* at 354. But "when the legislature abolishe[s] a common law cause of action and substitute[s] a remedy that [i]s new, adequate, and fundamentally different from that which was provided at common law, there [i]s no constitutional right to a jury." *Id.* at 353-54; *see also Breimhorst*, 227 Minn. at 434, 35 N.W.2d at 734 ("[W]hen a certain action at law is abolished the right of jury trial incident thereto is no longer involved.").

The WCA is one instance in which we have acknowledged that the Legislature abolished the common law and replaced it with a new, adequate, and fundamentally different remedy. *Abraham*, 639 N.W.2d at 353-54; *Breimhorst*, 227 Minn. at 436, 35 N.W.2d at 735 ("By the weight of authority, it is recognized that compulsory workmen's compensation acts similar to ours do provide a remedy which is an adequate substitute for the common-law or statutory action for damages for injuries sustained by an employe[e] in his employment."); *see also McDaniel v. United Hardware Distrib. Co.*, 469 N.W.2d 84, 85 (Minn. 1991) ("Section 176.82 is not a codification of the common law."). "Workers' compensation is not an outgrowth of the common law or of employers' liability legislation; it is the expression of an entirely new social principle . . . ." 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law*, ch. 2, Scope (2013); *see*

*also* Elmer H. Blair, *Reference Guide to Workmen's Compensation* § 1.00 (1974) ("Workmen's compensation statutes today are recognized as substitutes for, not supplements to, common law tort actions.").

Thus, the workers' compensation system is "a unique system which is neither a branch of tort law nor social insurance." 1 Larson & Larson, *supra*, § 1.02. The separation of workers' compensation from common law concepts, including the rights, remedies, and defenses that would be found in tort law, is essential to ensuring that the workers' compensation system functions properly. Professor Larson has noted that "[a]lmost every major error that can be observed in the development of compensation law, whether judicial or legislative, can be traced . . . to the importation of tort ideas," in part due to "thwarting the social purposes of the legislation by the importation of common-law restrictions." *Id.* §§ 1.02, 1.04[4]. The majority incorrectly treats the WCA, including Minn. Stat. § 176.82, subd. 1, as simply creating new civil actions, similar to the common law actions that previously existed. The Legislature created new remedies through the WCA, but these are fundamentally new remedies that abolished the civil tort actions that previously existed. To treat Minn. Stat. § 176.82, subd. 1, as simply a new civil action, as the majority does, ignores the unique remedies contained in the WCA and the purpose behind those remedies.

The Legislature's intent that the WCA, including Minn. Stat. § 176.82, subd. 1, serve as a replacement for any previous common law causes of action can be found in Minn. Stat. § 176.001 (2012). The Legislature specifically states that the workers' compensation laws found in chapter 176 "are not remedial in any sense," and that the

system is "based on a mutual renunciation of common law rights and defenses by employers and employees alike." Minn. Stat. § 176.001. The Legislature determined that the benefits gained by this system, including "the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers," *id.*, warranted the loss of common law rights and defenses, including the right to a jury trial. Therefore, it is clear that the workers' compensation system, as laid out in chapter 176, was intended to abolish common law causes of action and replace them with an entirely new system.

## II.

Minnesota's system for workers' compensation includes Minn. Stat. § 176.82, subd. 1, the retaliatory-discharge provision at issue here. Federal courts have previously held that where a retaliatory-discharge claim is created by an express provision within the workers' compensation scheme, that retaliatory-discharge claim arises under the state's workers' compensation laws and not the common law. *See Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1246 (8th Cir. 1995) ("[W]here a state legislature enacts a provision within its workers' compensation laws and creates a specific right of action, a civil action brought to enforce that right of action is, by definition, a civil action arising under the workers' compensation laws of that state . . . ."). This concept of "arising under" the workers' compensation scheme distinguishes between causes of action that are grounded in a specific workers' compensation statute and claims that are based on statutes that cover many types of wrongful discharge or stem from the common law tort system. *See Hanna v. Fleetguard, Inc.*, 900 F. Supp. 1110, 1118-19 (N.D. Iowa 1995) (distinguishing

"claims of retaliatory discharge . . . [that] are expressly provided for in [a state's] statutory workers' compensation scheme," and therefore "arise under" the workers' compensation laws, from retaliatory discharge claims "fashioned by the courts from a state's common law" that do not "arise under" the workers' compensation scheme even when applied to retaliation for filing a workers' compensation claim).[1] This means Minn. Stat. § 176.82, subd. 1, which is located within the WCA and is a specific remedy created exclusively for retaliation based on filing a workers' compensation claim, is properly viewed as a part of the workers' compensation system, and so it should be analyzed as a workers' compensation remedy, not as a general tort remedy.[2]

The majority claims that the remedy provided in Minn. Stat. § 176.82, subd. 1, is not fundamentally different from claims available at common law, but this argument ignores the fact that Minn. Stat. § 176.82, subd. 1, could not have existed at common law. A remedy for retaliation based on filing a WCA claim did not and could not exist without the WCA itself. Put simply, Minn. Stat. § 176.82, subd. 1, is one remedy in a new,

---

[1]   Although the majority cites *Tyroll v. Private Label Chemicals, Inc.* as evidence that we have previously found the right to a jury trial in a case involving rights connected to the WCA, *Tyroll* did not involve a cause of action arising under the WCA. 505 N.W.2d 54, 57 (Minn. 1993) (discussing the cause of action as "a routine negligence personal injury action"). In *Tyroll*, the employer's right to subrogation, not the actual cause of action, was found in the Workers' Compensation Act. *Id.* This is a far different position than the case before us today, in which the cause of action itself, not just a right that can be applied to other causes of actions, was established by the WCA.

[2]   *See also McDaniel*, 469 N.W.2d at 85 ("Section 176.82 is not a codification of the common law."); *Sipe v. STS Mfg., Inc.*, 834 N.W.2d 683, 687 (Minn. 2013) (referring to Minn. Stat. § 176.82 as "an intentional tort *created by statute*," and distinguishing it from an "action originat[ing] at common law").

unique system of rights and obligations that was entirely foreign to the common law. As such it should be treated the same way as the other causes of action in the WCA, which we have recognized do not include the right to a jury trial because they are fundamentally different remedies that serve as a replacement for the common law causes of action abolished by the WCA.[3] *See Breimhorst*, 227 Minn. at 434, 35 N.W.2d at 734.

If the Legislature had intended for Minn. Stat. § 176.82, subd. 1, to operate as a common law tort or general cause of action for wrongful discharge instead of as part of the unique system created by the WCA, the Legislature easily could have done so. For example, instead of creating Minn. Stat. § 176.82, subd. 1, as a provision within the WCA, and therefore subject to the opening statement of intent found in Minn. Stat. § 176.001, the Legislature could have modified the statutes that codified the tort of retaliatory discharge, such as Minn. Stat. § 181.932 (2012), to simply include retaliation for filing a worker's compensation claim. It did not do so. Minnesota Statutes § 176.82, subd. 1, therefore, is properly analyzed as a unique remedy created under the WCA, which abolished rather than codified or modified any common law causes of action.[4]

---

[3]     The majority argues that the Legislature cannot abrogate the constitutional right to jury trial by rebranding a common-law tort as a workers' compensation claim. True enough, but this critique misses the point: Minn. Stat. § 176.82, subd. 1 is not a mere codification of common-law retaliatory discharge. Despite similarities to preexisting tort law, workers' compensation is a novel statutory scheme with distinct rights, responsibilities, and procedures. The Legislature therefore did not abrogate a constitutional right to jury trial because such a right never existed in the first place.

[4]     Although historically there was no specific common law action correlating to the modern remedy provided in Minn. Stat. § 176.82, subd. 1, we have recognized that there was a general "species" of wrongful-discharge actions at common law that was similar to

(Footnote continued on next page.)

The majority relies on *Abraham* to support the assertion of a right to a jury trial where retaliatory-discharge claims are made. But because Minn. Stat. § 176.82, subd. 1, abolished and replaced the common law, the framework laid out in *Abraham* simply does not apply here. *Abraham* did not deal with the abolition and replacement of the common law, but rather with situations in which the Legislature "codifies, creates, or modifies a cause of action at law." *Abraham*, 639 N.W.2d at 354. In *Abraham*, we stated that "when the legislature abolishe[s] a common law cause of action and substitute[s] a remedy that [i]s new, adequate, and fundamentally different from that which was provided at common law, there [i]s no constitutional right to a jury." *Id.* at 353-54. We specifically distinguished the facts in *Abraham* from remedies created under the WCA, noting that workers' compensation remedies abolish and replace common law causes of action, and so there is no constitutional right to a jury trial on these claims. *Id.*[5]

_____

(Footnote continued from previous page.)
modern retaliatory-discharge claims. *Abraham*, 639 N.W.2d at 350. The inclusion of Minn. Stat. § 176.82, subd. 1, in the WCA precluded the use of these general wrongful discharge actions from ever applying to retaliation claims based on filing a WCA claim. In that sense Minn. Stat. § 176.82, subd. 1, abolished the common law system that could have been used to handle retaliatory discharge claims related to workers' compensation claims and replaced that common law system with a remedy that is unique to the context of workers' compensation.

[5] Specifically, in *Abraham* we had the opportunity to overrule *Breimhorst*, 227 Minn. at 434, 35 N.W.2d at 734, which held that there was no right to a jury trial for a remedy created under the WCA. *See Abraham*, 639 N.W.2d at 353-54. Instead of overruling *Breimhorst*, however, we carefully distinguished it in *Abraham* because *Breimhorst* involved the WCA. *Abraham*, 639 N.W.2d at 353 (stating that the analysis in *Abraham* was "not altered by our decision[] in *Breimhorst*" because the "remedy under the Workers' Compensation Act" at issue in *Breimhorst* was "*new, adequate*, and *fundamentally different* from the common law cause of action"). The majority concludes

(Footnote continued on next page.)

Therefore, contrary to the majority's analysis, *Abraham* bolsters the conclusion that there is no constitutional right to a jury trial for claims brought under Minn. Stat. § 176.82, subd. 1, because that statute, as part of the workers' compensation system, does not codify, create or modify a cause of action at law. Instead, Minn. Stat. § 176.82, subd. 1, abolished and replaced common law causes of action with a fundamentally new type of remedy that is part of the unique statutory system for workers' compensation, which, according to *Abraham*, puts it outside the scope of the right to a jury trial provided by Article I, Section 4, of the Minnesota Constitution.

III.

Because there is no constitutional right to a jury trial for claims brought under Minn. Stat. § 176.82, subd. 1, the next task is to determine whether the statute itself provides a jury trial right. Minnesota courts have recognized that the Legislature has chosen to withhold the right to a jury trial in Minn. Stat. § 176.82, subd. 1. *Snesrud v. Instant Web, Inc.*, 484 N.W.2d 423, 427 (Minn. App. 1992) (concluding that a jury trial was not required because "section 176.82 has no element of a common law claim which

_____

(Footnote continued from previous page.)
that the right to a jury trial exists in the present dispute because the cause of action is legal in nature and the plaintiff seeks monetary damages, but this analysis would also lead to the conclusion that the plaintiffs in *Breimhorst*, in which the action was also legal in nature and the plaintiffs sought monetary damages, had a right to a jury trial. Thus, it is essential to recognize that the formulation in *Abraham* of examining the type of action and the type of relief to determine if a jury trial right exists does not apply in cases— including *Breimhorst*, the case before us today, or other cases arising under the WCA—in which the remedy designed by the Legislature is a new, adequate, and fundamentally different substitution for any common law causes of action that could have otherwise applied.

could otherwise support the right to a jury trial"), *rev. denied* (Minn. June 17, 1992). The text of Minn. Stat. § 176.82, subd. 1, says nothing about granting the right to a jury trial, and other portions of the WCA do not include the right to a jury trial, even when the claims governed by those provisions are heard in a district court. *See* Minn. Stat. § 176.301 (2012) ("When a workers' compensation issue is present in the district court action, the court may try the action itself *without a jury*, or refer the matter to the chief administrative law judge for assignment to a compensation judge." (emphasis added)); s*ee also Breimhorst*, 227 Minn. at 434, 35 N.W.2d at 734 (concluding that a remedy provided by the WCA did not include the right a jury trial).

Concluding that Minn. Stat. § 176.82, subd. 1, provides for a jury trial right, even though the Legislature did not provide for such a right, is not in harmony with the rest of the WCA. *See Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 496 (Minn. 2009) (noting that we construe a statute "as a whole so as to harmonize and give effect to all its parts"). Reading the right to a jury trial into Minn. Stat. § 176.82, subd. 1, also goes against the intent of the Legislature that *all* remedies included within chapter 176 are based on the "mutual renunciation of common law rights and defenses by employers and employees alike." Minn. Stat. § 176.001. Furthermore, allowing a jury to calculate the "diminution in workers' compensation benefits" incurred by the retaliation under Minn. Stat. § 176.82, subd. 1, subverts an underlying rationale for the workers' compensation system, which is that a compensation judge can more efficiently and accurately determine appropriate workers' compensation benefits than a jury with no

workers' compensation experience.[6]   Thus, the Legislature neither explicitly nor implicitly intended Minn. Stat. § 176.82, subd. 1, to include the right to a jury trial.

IV.

Because the Legislature did not provide for the right to a jury trial and because this right is not guaranteed under Article I, Section 4, of the Minnesota Constitution, for remedies created by statute that abolish and replace common law actions, I conclude that there is no right to a jury trial under Minn. Stat. § 176.82, subd. 1.   Therefore, I respectfully dissent on this issue.[7]

GILDEA, Chief Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Anderson.

DIETZEN, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Anderson.

---

[6]   Although perhaps not relevant in this case, Minn. Stat. § 176.82, subd. 1, allows an employee to seek damages that are based on the workers' compensation benefits to which the employee is entitled.   Thus, under the majority's analysis, if workers' compensation benefits have not yet been awarded to the employee, a jury may be asked to determine the amount of benefits to which the employee theoretically would be entitled.   The practical challenges associated with a jury attempting to assess a future stream of benefits to be awarded by a future workers' compensation court are obvious and daunting.

[7]   My conclusion that no constitutional right to a jury trial attaches here should not be confused with the public policy argument for enacting statutory authority for a jury trial in these circumstances.   The Legislature created the workers' compensation system and it is to the Legislature that this public policy issue should be addressed.