*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0966**

Cameron Anderson,
Appellant,

vs.

North American Gear & Forge,
Respondent

**Filed January 11, 2016
Affirmed
Worke, Judge**

Hennepin County District Court
File No. 27-CV-14-10552

Bryce M. Miller, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, Minnesota (for appellant)

James T. Martin, Julian C. Janes, Gislason, Martin, Varpness & Janes, P.A., Edina, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Worke, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant challenges the district court's summary-judgment dismissal of his retaliatory-discharge claim, arguing that there is a genuine issue of material fact as to

whether he was discharged from his employment for seeking workers' compensation benefits. We affirm.

**FACTS**

In October 2011, appellant Cameron Anderson began at-will employment with respondent North American Gear & Forge. In February 2012, after multiple unexcused absences, Anderson received a written warning that his absenteeism "may result in termination." In May 2012, after several more unexcused absences, Anderson received a "final" written warning regarding attendance.

While Anderson was working on August 27, 2012, a piece of hot metal flew behind his safety glasses and burned the skin near his right eye. He informed his supervisor, Jeff Maciej, and together they made a report to the employee responsible for workers' compensation claims. Anderson requested to leave work to visit the doctor and claims that Maciej pushed back, saying something like "they're just going to send you back and tell you you're okay." Anderson informed Maciej that he wanted to see a doctor anyway, and was allowed to leave. An occupational health doctor examined Anderson that day and issued a report of workability which stated that: (1) Anderson had a "tiny burn" next to his eye but no eye damage; (2) Anderson would reach maximum medical improvement within three days; and (3) follow up was unnecessary unless eye irritation continued after August 29th. Anderson was cleared to work without restriction and returned to work the same day.

The next day, Tuesday, August 28th, Anderson called into work,[1] informing Gear & Forge that his eye hurt and that he was going to see the doctor. When the occupational health specialist was unavailable, Anderson saw his primary care physician who concluded that Anderson could return to work immediately without restriction. Anderson did not go to work that day.

On Wednesday, August 29th, Anderson came to work but left early to see the occupational health specialist because the working environment irritated his burn. Maciej did not want to let Anderson leave because the doctors approved him to work without restriction, but he "told [Anderson] to do what he thought he had to do." The occupational health specialist examined Anderson and issued a second report of workability which noted the "tiny burn" next to his eye but found no eye injury. Anderson did not attend work on Thursday, August 30th. Maciej disputes Anderson's claim that he gave Anderson permission to stay home on August 30th so that he could have a long weekend to heal. When Anderson returned to work on the following Tuesday for his next scheduled shift, Maciej terminated him, citing excessive absenteeism. Maciej admitted that the three August absences "made [his] decision for terminating [Anderson]." But he also noted that the absences "invoked a violation of the final warning."

---

[1] Gear & Forge disputes Anderson's claim that he called in. For the purposes of this appeal, we view the facts in the light most favorable to Anderson and thus accept Anderson's claim. *See STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002) (describing summary-judgment standard).

Anderson filed a complaint alleging that his termination was reprisal in violation of the Minnesota Workers' Compensation Act (WCA). After a hearing, the district court granted Gear & Forge's summary-judgment motion, determining that there were no genuine issues of material fact and that Anderson failed to meet his burden under the *McDonnell Douglas* framework. This appeal follows.

## D E C I S I O N

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact." Minn. R. Civ. P. 56.03. We review the grant of summary judgment de novo, viewing the facts "in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc.*, 644 N.W.2d at 76-77. "[T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997).

The WCA imposes civil liability upon an employer who discharges an employee for seeking workers' compensation benefits. Minn. Stat. § 176.82, subd. 1 (2014). Minnesota applies the *McDonnell Douglas* burden shifting framework to retaliatory-discharge claims under the WCA. *Schmitz v. U.S. Steel Corp*., 831 N.W.2d 656, 670-71 (Minn. App. 2013), *aff'd*, 852 N.W.2d 669 (Minn. 2014). Under this framework,

> an employee alleging retaliatory discharge must first make out a prima facie case consisting of three elements: (1) statutorily protected conduct by the employee; (2) adverse

4

employment action by the employer, and (3) a causal connection between the two. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. If the employer meets that burden of production, the burden shifts back to the employee to demonstrate that the employer's stated reason for its action was more likely than not pretextual.

*Id.* (citations omitted). It is undisputed that Anderson engaged in the protected conduct of seeking workers' compensation benefits and that his termination constituted an adverse action by Gear & Forge. But the parties contest the third element: whether there was a causal connection between the protected action and the termination.

Anderson argues that Maciej's hostility toward him when he first requested to seek treatment supports the conclusion that the discharge was related to his workers' compensation claim. We disagree. Immediately following Anderson's injury, Maciej accompanied him to the employee in charge of workers' compensation benefits and allowed him to go to the doctor. The employee in charge of workers' compensation benefits testified at her deposition that Anderson and Maciej followed Gear & Forge's standard policy. Moreover, even if Maciej preferred that Anderson stay at work, there is no evidence that he interfered with Anderson filing a workers' compensation claim or terminated Anderson because he insisted on seeking treatment.

Anderson next argues that the temporal proximity between filing his workers' compensation claim and termination, combined with Maciej's purported hostility, establishes a causal connection. The timing of a discharge can "raise an inference of retaliatory motive that is sufficient to satisfy the causation element of [a] prima facie case," *Hubbard*, 330 N.W.2d at 445-46, but "usually more than a temporal connection is

5

necessary to create a genuine fact issue on retaliation." *Freeman v. Ace Tel. Ass'n*, 404 F. Supp. 2d 1127, 1141 (D. Minn. 2005).

Anderson's termination occurred in close proximity to his workers' compensation claim. But his discharge also occurred at the beginning of his first shift after the absences. Although portions of Anderson's absences were directly related to medical visits for his workplace injury, he was medically cleared to work without restriction after each of three appointments with two separate doctors. Anderson does not claim that the entirety of his absences were excused; the day after his injury, Anderson did not return to work after being cleared by his primary care physician. Moreover, Anderson's claims that he was treated with hostility and that he was permitted to take absences are supported only by his own statements, which are not sufficiently probative. *See DLH, Inc.*, 566 N.W.2d at 71 (stating that there is no genuine issue of material fact when evidence does not create more than a metaphysical doubt as to a factual issue). Thus, Anderson cannot establish a prima facie causal connection.

Further, even if Anderson could meet his prima facie burden, Gear & Forge articulated a legitimate, non-retaliatory reason for termination by citing Anderson's excessive absenteeism. *See Schmitz*, 831 N.W.2d at 670-71 (describing burden-shifting requirement); *see also Jones v. Rosemount, Inc.*, 361 N.W.2d 118, 120 (Minn. App. 1985) (upholding absenteeism as grounds for discharge from employment). The burden thus returns to Anderson to establish that it is more likely than not that the absenteeism was a pretext. *See McGrath v. TCF Bank Sav., fsb*, 509 N.W.2d 365, 365 (Minn. 1993) ("[E]ven if an employer has a legitimate reason for the discharge, a plaintiff may

6

nevertheless prevail if an illegitimate reason more likely than not motivated the discharge decision." (quotation omitted)). Anderson asserts that because his absences surrounding the injury were excused, the cited absenteeism must be a pretext. But, as discussed above, all his absences were not excused and the only evidence that he was permitted to miss other shifts came from his own testimony. Three separate doctors' reports cleared Anderson to work without restriction and did not excuse his absences outside of the appointment times.

Anderson also had a history of absenteeism, which resulted in two prior written warnings that clearly stated continued absences would result in termination. Anderson claims that Maciej admitted that the August absences were the sole basis for termination, relying on Maciej's statement that "[a]ll three of [the August absences] made [his] decision for terminating [Anderson]." But Maciej also testified that Anderson was terminated for the August absences *and* prior absences; the relevant deposition testimony regarded whether one of the specific August absences was the basis for termination, not whether the August absences were the sole basis for termination. In light of the larger context, the record does not support Anderson's claim that he was terminated only for the August absences. Given Anderson's history of absenteeism, including the missed August time, he has not met his burden to show that Gear & Forge's stated reason was pretextual.

**Affirmed.**